USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/9/26____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON ABADI,

        Plaintiff,

    -against-

UNITED AIRLINES, INC., et al.,

        Defendants.

25-CV-1771 (PAE) (BCM)

**REPORT AND RECOMMENDATION TO THE HONORABLE PAUL A. ENGELMAYER RE MOTIONS TO DISMISS; ORDER DECLINING TO ISSUE OSC RE SANCTIONS**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Aaron Abadi, proceeding pro se, seeks declaratory and injunctive relief against United Airlines, Inc. (United), American Airlines, Inc. (American), and Emirates, alleging that they violated the Air Carrier Access Act (ACAA), 49 U.S.C. § 41705, by failing to provide the seating accommodations that plaintiff requested for his disability on four occasions in 2024 and 2025. Now before me for report and recommendation are two motions to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6): one filed by defendants United and American (collectively the Domestic Airlines) (Dkt. 21), and another by defendant Emirates. (Dkt. 37.) Defendants argue that the ACAA does not provide a private right of action against an airline. Defendants are correct, as the Second Circuit recently confirmed in *Abadi v. Fauci*, 2025 WL 1873141 (2d Cir. July 8, 2025) (summary order). In that case – which arose out of an earlier lawsuit by the same plaintiff – the Court of Appeals affirmed the dismissal of his ACAA claims against multiple airlines (including defendants herein) because "the text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court." *Id*. at *3 (quoting *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011)). Consequently, as discussed in more detail below, defendants' motions to dismiss should be granted, and plaintiff's claims should be dismissed with prejudice.

Defendants also request that the Court exercise its power, pursuant to Fed. R. Civ. P. 11(c)(3), to order plaintiff to show cause why he should not be sanctioned pursuant to Fed. R. Civ. P. 11(b). However, neither the Domestic Airlines nor Emirates served or filed a sanctions motion in accordance with Fed. R. Civ. P. 11(c)(2). At this point, moreover, "the opportunity to correct or withdraw the challenged submission is unavailable," which means that Rule 11 sanctions could not be imposed absent "a finding of bad faith." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d Cir. 2023). For these reasons, among others, I decline to issue an order to show cause.

## I.    BACKGROUND

### A.    Factual Allegations

Plaintiff Abadi, who is an active litigator in this Court and others,[1] resides in New York City but frequently flies to India for business purposes. Compl. (Dkt. 1) ¶¶ 10, 16. Air travel presents challenges for plaintiff because has a "documented [left] knee condition," including diagnoses of minimal tricompartmental degenerative bony remodeling and a torn meniscus, and

---

[1] In the Southern District of New York alone, plaintiff has filed 14 civil lawsuits since September 28, 2021 (including the instant action), many of them alleging disability discrimination under the ACAA and other statutes. *See Abadi v. Brit. Airways PLC*, 2022 WL 219998 (S.D.N.Y. Jan. 25, 2022); *Abadi v. City of New York*, 2022 WL 347632 (S.D.N.Y. Feb. 4, 2022), *appeal dismissed as moot*, 2023 WL 3295949 (2d Cir. May 8, 2023), *cert. denied*, 144 S. Ct. 260 (2023); *Abadi v. NYU Langone Health Sys.*, 705 F. Supp. 3d 172 (S.D.N.Y. 2023); *Abadi v. Lyft, Inc.*, No. 23-CV-03618 (S.D.N.Y., complaint filed Apr. 28, 2023); *Abadi v. Apple, Inc.*, 2024 WL 5715890 (S.D.N.Y. Jan. 18, 2024); *Abadi v. Adams*, 2024 WL 2802718 (S.D.N.Y. May 28, 2024), *appeal dismissed*, 2024 WL 5485802 (2d Cir. Nov. 15, 2024), *cert. denied*, 145 S. Ct. 1463 (2025); *Abadi v. Biden*, 2024 WL 3469371 (S.D.N.Y. July 12, 2024), *appeal dismissed*, 2024 WL 4853684 (2d Cir. Nov. 8, 2024), *cert. denied*, 145 S. Ct. 1112 (2025); *Abadi v. Am. Airlines, Inc.*, 2024 WL 3849188 (S.D.N.Y. Aug. 16, 2024), *aff'd in part sub nom.*, *Abadi v. Fauci*, 2025 WL 1873141 (2d Cir. July 8, 2025); *Abadi v. United States*, 2024 WL 4123490 (S.D.N.Y. Sept. 9, 2024), *aff'd*, 2025 WL 2949535 (2d Cir. Feb. 24, 2025); *Abadi v. Citibank, N.A.*, No. 24-CV-9075 (S.D.N.Y., complaint filed Nov. 23, 2024); *Abadi v. Greyhound Lines, Inc.*, 2024 WL 5155601 (S.D.N.Y. Dec. 18, 2024); *Abadi v. Citibank, N.A.*, 2025 WL 1910136 (S.D.N.Y. July 11, 2025).

is six feet tall. *Id*. ¶¶ 14-15 (emphasis omitted) & Ex. A (Dkt. 1-1) (medical records). Due to his knee condition, "[p]laintiff requires a wheelchair to navigate large airport terminals." *Id*. ¶ 17. Additionally, due to his knee condition and his height, plaintiff normally requests "extra legroom seating, such as in a bulkhead or exit row," to allow for "adequate stretching." *Id*. ¶ 15 (emphasis omitted). He explains that regular economy seating, particularly on long-haul flights, "exacerbates his condition" and creates "serious medical risks." *Id*. (emphasis omitted). Plaintiff further alleges that he "requires a window seat" on long haul flights to avoid having other passengers "climb over [his] feet," which would "cause pain," or bump into him while walking in the aisle, which "could be disastrous." *Id*. ¶ 31. Other than his left knee condition, plaintiff alleges that he is "physically fit and fully capable of performing all necessary tasks, including those required for sitting in an emergency exit row." *Id*. ¶ 17.

### 1. United

On October 12, 2024, plaintiff purchased a ticket for a United flight departing on October 30, 2024, from New York to Chicago, with connections to Frankfurt, Germany, and then to Bengaluru, India. Compl. ¶¶ 18-19; *see also id*. Ex. B at ECF pp. 3-4 (trip confirmation and receipt). Several weeks in advance of the flight, plaintiff requested "an extra legroom window seat." Compl. Ex. B at ECF pp. 12-13 (October 12, 2024 email from plaintiff to United). However, United responded that the information he provided did not meet "guidelines from DOT 382" for assigning priority seats more than 24 hours prior to flight department, and advised plaintiff that he could "purchase economy plus seats" on the airline's website. *Id*. at ECF p. 12 (October 13, 2024 email from United to plaintiff). Plaintiff asked the airline to "reconsider," *id*. at ECF pp. 11-12 (October 13, 2024 email from plaintiff to United), after which another representative wrote to plaintiff, "[w]hen u arrive at the airport please let them know of the assistance that you need." *Id*. at ECF p. 11 (October 14, 2024 email from United to plaintiff).

Plaintiff explained that if he waited until he got to the airport, "the seats that I'm requesting will no longer be available." *Id*. at ECF p. 10 (October 14, 2024 email from plaintiff to United). The next day, a third representative emailed to confirm that United was "unable to assign a seat to [plaintiff] in Economy Plus free of charge." *Id*. at ECF p. 10 (October 15, 2024 email from United to plaintiff).[2]

Ultimately, rather than take the scheduled flights, plaintiff obtained a refund of his airfare and filed a complaint with the United States Department of Transportation (DOT). Compl. Ex. B at ECF p. 2 (DOT complaint); *id*. Ex. C at ECF p. 5 (Dec. 2, 2024 email from United representative Susan Campbell to plaintiff, noting that he "did not fly and received a refund of [his] ticket"). On November 19, 2024, the Director of Civil Rights Advocacy at the DOT wrote to plaintiff to say that the DOT would "investigate" his complaint (including by requesting a response from the airline) and would "advise [plaintiff] of the disposition of [his] complaint" at the conclusion of the investigation. Compl. Ex. B at ECF p. 1. On December 2, 2024, Campbell reported to plaintiff that after the airline reviewed his reservation, his concerns, and "documentation provided through the DOT," it concluded that his "disability would not qualify for extra legroom seating." Compl. Ex. C at ECF p. 5. Campbell explained that the ACAA required the airlines to provide extra legroom seating "if the passenger has a fused/immobile leg or is traveling with a service animal" – criteria that plaintiff did not meet – and added that his Mileage Plus Silver status "only gives [him] free upgrades to Economy Plus on the day of travel after check in." *Id*. Plaintiff disagreed, writing that Campbell's "interpretation of the applicable law is incorrect." *Id*. at ECF pp. 3-4 (December 2, 2024 email from plaintiff to Campbell). After

---

[2] Although plaintiff alleges in the Complaint that he requested an "economy plus or bulkhead seat," Compl. ¶ 19, his pre-flight email correspondence with United, *see id*. Exs. B, C, does not appear to include any express reference to bulkhead seating.

several further email exchanges – during which plaintiff and Campbell continued to disagree as to the requirements of the ACAA – Campbell wrote, on December 4, 2024, that she was "sorry our efforts have failed to meet your expectations," but that United "must respectfully consider this matter closed." *Id*. at ECF p. 1.[3]

### 2. American

On June 15, 2024, Abadi took an American flight from Charlotte to Philadelphia. Compl. ¶ 27. His pre-flight request for a seat with extra legroom was ignored. *Id*.; *see also id*. Ex. E at ECF p. 7 (June 17, 2024 email from plaintiff to American). Then, at the gate, he was told that he could not be seated in an exit row "because [he] had requested a wheelchair." *Id*. ¶ 27. Plaintiff "clarified" to the agent that he only needed the wheelchair for "long distances" and could "perform all necessary tasks required for an exit row seat," but American still denied him the exit row seat. *Id*. Ex. E at ECF p. 7.

On December 7, 2024, plaintiff booked an American flight from Delhi, India, to New York, departing on December 10, 2024. *See* Compl. Ex. E at ECF p. 2-3 (trip confirmation and receipt). That same day, he emailed American, explained that he had requested a wheelchair because of his knee disability, and advised that he also required "an extra legroom seat by the window." *Id*. at ECF p. 1. However, his request was "totally ignored." Compl. ¶ 25. On December 12, 2024, plaintiff wrote again to inquire why his previous email was "never responded to." *Id*. at ECF p. 1. On February 12, 2025 – after plaintiff lodged a complaint with the DOT – American offered him an apology, and credited his AAdvantage account with 10,000 miles. Compl. ¶ 25; *id*. Ex. E at ECF p. 1.

---

[3] In addition to these exchanges – all documented on email – plaintiff alleges that United refused to allow him to "sit in an exit row seat" based on his use of a wheelchair at the terminal, and complains that this "blanket policy" violates 14 C.F.R. § 382.87. Compl. ¶¶ 3, 20. However, he does not attach any written pre-flight communications with United on this topic.

In addition to these two incidents, plaintiff alleges that on February 15, 2025, he "contacted American Airlines regarding an upcoming international trip, requesting an extra legroom bulkhead or exit row seat," and that American "denied the request." Compl. ¶¶ 23-24. However, the correspondence attached to the Complaint shows that on February 15, 2025, Abadi emailed American to propose a pre-litigation resolution of his anticipated claims, attaching a "draft complaint" (which plaintiff did not include in the exhibit). *Id*. Ex. D at ECF pp. 2-4.

### 3. Emirates

On February 24, 2024, plaintiff "spent over three hours on the phone and chat with Emirates representatives, requesting a bulkhead or exit row seat for an upcoming flight." Compl. ¶ 27. He also requested a window seat. *Id*. Ex. F at ECF pp. 1-33 (chat history). Emirates advised plaintiff that it could not assign him to a bulkhead, exit row, or extra legroom seat because of his wheelchair, even though plaintiff assured the airline that he was capable of "assisting at the exit row just like any other passenger," Compl. ¶ 29; *id*. Ex. F at ECF pp. 1-2, 5-6, 9, and Emirates instead offered him an "aisle seat with a moveable armrest." *Id*. Ex. F at ECF pp. 9-13. Emirates explained that if it assigned plaintiff to an "emergency exit seat," it would have to "remove the wheelchair requested." *Id*. at ECF p. 21. Additionally, Emirates advised plaintiff that "extra legroom seats are always chargeable," *id*. at ECF p. 25, and that, while a bulkhead seat "is not an extra legroom seat," it "can be assigned at the airport only." *Id*. at ECF p. 18. Ultimately, "Emirates . . . provided a bulkhead seat" on an aisle to Abadi "without charge," but Emirates did not give him a window seat. Compl. ¶ 29.

### B. Procedural History

Plaintiff filed his Complaint on February 26, 2025, asserting three causes of action against the defendant airlines, all under the ACAA, which prohibits air carriers from discriminating against "an otherwise qualified individual" because he or she "has a physical or

mental impairment that substantially limits one or more major life activities," 49 U.S.C. § 41705(a)(1), and its enabling regulations. First, he alleges that defendants violated the ACAA and 14 C.F.R. § 382.85 by denying him a seat "appropriate for his disability" without extra charge. Compl. at ECF pp. 12-13, ¶ 6.[4] Second, he claims that defendants violated 14 C.F.R. § 382.87, as well as a draft FAA Advisory Circular (AC 120-32A), by excluding him from exit row seating "solely because he requested a wheelchair, without any assessment of his ability." Compl. at ECF pp. 13-15, ¶ 9; *see also id*. Ex. G (copy of draft Advisory Circular). Third, plaintiff contends that defendants violated 14 C.F.R. §§ 382.31 and 382.81(d) by "attempting to charge Plaintiff for extra legroom seating required for his disability." *Id*. at ECF pp. 15-16, ¶ 14. Plaintiff seeks both declaratory and injunctive relief, plus attorneys' fees and costs. Compl. at ECF pp. 16-17. He does not seek money damages. *Id*. at ECF p. 18. On March 31, 2025, the Hon. Paul A. Engelmayer, United States District Judge, referred this action to me for general pretrial management. (Dkt. 6.)

On May 7, 2025, the Domestic Airlines filed their motion to dismiss pursuant to Rule 12(b)(6). In their supporting memorandum, they argue that plaintiff's claims should be dismissed because "there is no private right of action under the ACAA," *see* Dom. Airlines Mem. (Dkt 21-1) at 4, and that plaintiff cannot escape settled Second Circuit law on this point by seeking declaratory and injunctive relief rather than damages. *Id*. at 9. Further, the Domestic Airlines request that the Court, "on its own initiative," order plaintiff to show cause why he should not be sanctioned pursuant to Rule 11 for asserting frivolous claims in bad faith. *Id*. at 10-11.

On June 19, 2025, Emirates filed its own motion to dismiss pursuant to Rule 12(b)(6), echoing the Domestic Airlines' arguments, *see* Emirates Mem. (Dkt. 37-1) at 4-12, and adding

---

[4] Beginning on page 12 of the Complaint, the paragraph numbers repeat.

that even if a private right of action existed under the ACAA, Emirates would not be liable, because it "provided Plaintiff with a reasonable seat accommodation pursuant to 14 C.F.R. § 382.87." *Id*. at 13-16. Invoking Fed. R. Civ. P. 11(c)(3), Emirates also asks the Court to issue an order to show cause (OSC), *sua sponte*, why he should not be sanctioned, *see* Emirates Mem. at 16-18, and argues that the appropriate sanction would be a filing injunction, preventing plaintiff from "filing future litigations against Emirates absent court approval." *Id*. at 18.

In opposition to the Domestic Airlines' motion, plaintiff argues that the "absence of a private right of action under the ACAA" is not fatal to his claims, because "the Declaratory Judgment Act permits courts to interpret federal law and issue declaratory or injunctive relief even when no private damages remedy exists." Pl. Opp. to Dom. Airlines (Dkt. 27) at 6-7. Additionally, he contends that *Lopez* – in which the Second Circuit squarely held that the ACAA "does not expressly provide a right to sue the air carrier, and that right should not be implied," 662 F.2d at 597 – does not bar his claims because it "did not address whether courts may interpret ACAA regulations or issue declaratory or injunctive relief." Pl. Opp. to Dom. Airlines at 12. Finally, plaintiff argues that Rule 11 sanctions would be inappropriate because he is advancing a "good faith argument for a novel interpretation of the law." *Id*. at 15. He makes substantially similar arguments in opposition to Emirates' motion. *See* Pl. Opp. to Emirates (Dkt. 39) at 7-16, adding that Emirates did not provide him with adequate accommodations by assigning him an aisle bulkhead seat. *Id*. at 17. Finally, plaintiff argues that he should not be enjoined from filing future lawsuits against Emirates because – although Emirates was a defendant in *Fauci* – in that case plaintiff did not make a motion for injunctive relief in the district court. *Id*. at 22-23.

The Domestic Airlines filed their reply brief on May 20, 2024 (Dkt. 29), after which the Hon. Paul A. Engelmayer, United States District Judge, referred the Domestic Airlines' motion to me for report and recommendation. (Dkt. 28.) Emirates filed its reply brief on July 7, 2025 (Dkt. 40), after which plaintiff sought and received leave to file a sur-reply brief addressing Emirates' Rule 11 arguments. (*See* Dkts. 41-42.)

On July 9, 2025, the Domestic Airlines filed a notice of supplemental authority (Dkt. 43) attaching a copy of *Fauci*, decided one day earlier by the Second Circuit. In *Fauci*, plaintiff sued several governmental defendants and dozens of airlines – including American, United, and Emirates – asserting disability discrimination under, *inter alia*, the ACAA, "related to masking requirements while traveling during the COVID-19 pandemic." 2025 WL 1873141, at *1. In the district court, plaintiff sought "injunctive and declaratory relief" as well as damages. *Abadi v. Am. Airlines*, 2024 WL 1346437, at *15. The district judge dismissed Abadi's ACAA claims against the airlines in reliance on *Lopez*, *see id.* at *30-31, and the Second Circuit affirmed, rejecting his arguments that *Lopez* was wrongly decided:

> These arguments are unavailing. "A decision of a panel of this Court is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court." *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995) (per curiam). *Lopez* has not been overruled by us *en banc* or by the Supreme Court. Accordingly, the district court properly dismissed the ACAA claims.

*Fauci*, 2025 WL 1873141, at *3. On July 11, 2025, Emirates filed its own notice of supplemental authority, attaching the same opinion. (Dkt. 44.)

On December 9, 2025, Judge Engelmayer referred Emirates' motion to dismiss to me for report and recommendation. (Dkt. 45.)

9

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When evaluating a Rule 12(b)(6) motion, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, the court's task, when presented with a Rule 12(b)(6) motion, is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Mitchell-White v. Nw. Airlines, Inc.*, 446 F. App'x 316, 318 (2d Cir. 2011) (summary order) (quoting *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (citation and quotation marks omitted). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (quoting *Boddie v. New York State Div. of Parole*, 285 F. Supp. 2d 421, 426

(S.D.N.Y. 2003)). Thus, even a pro se plaintiff "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

### B.    Rule 11

Under Rule 11(b), the attorney or "unrepresented party" who signs a pleading presented to the court thereby represents, among other things, that the claims set forth in the pleading "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated," it may impose "an appropriate sanction," Fed. R. Civ. P. 11(c)(1), which can include – among other things – a tailored filing injunction to prevent the plaintiff from engaging in "further vexatious litigation." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23 (2d Cir. 1986).

Rule 11 motions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Before filing a Rule 11 motion, the moving party must first serve it, and then give the party who signed the allegedly frivolous pleading 21 days to withdraw or correct it. *Id*. The purpose of the 21-day "safe harbor" provision is "to give the opponent notice and an opportunity to consider withdrawing the filing without the court's involvement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012). When presented with a noticed motion for Rule 11 sanctions, the court applies an "objective unreasonableness" standard, *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000), and need not make a finding that the attorney or party to be sanctioned acted in "bad faith."

Even if no party files a Rule 11 motion, the court may, on its own initiative, order an attorney or a party to "show cause why conduct specifically described in the order has not

11

violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). However, "[w]hen a court initiates Rule 11 sanctions *sua sponte* and the opportunity to correct or withdraw the challenged submission is unavailable, the court must make a finding of bad faith on the part of the [party or attorney to be sanctioned] before imposing the sanctions." *Kyros L.*, 78 F.4th at 543; *see also Castro v. Mitchell*, 727 F. Supp. 2d 302, 309 (S.D.N.Y. 2010) ("[A] court cannot impose sanctions after a party is no longer able to withdraw or amend its challenged pleading unless the court makes a finding of subjective bad faith.").

Rule 11 sanctions are never mandatory. "[E]ven when a district court finds a violation of Rule 11, '[t]he decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion.'" *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)).

## III.    ANALYSIS

### A.    Motions to Dismiss

Federal statutes and regulations do not necessarily confer upon private plaintiffs the right to sue thereunder. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). Where, as here, a plaintiff attempts to sue under a statute that does not expressly authorize private civil claims, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286.

With respect to the ACAA, the Second Circuit has performed that "judicial task" and has determined that no express or implied private right of action exists, and thus that airline passengers may not sue air carriers directly for violation of the ACAA or its implementing regulations. *Lopez*, 662 F.3d at 597-98. As Judge Cabranes explained:

12

> [A]lthough the ACAA is intended to protect the passengers of air carriers against discrimination on the basis of disability, the text and structure of the statute show that Congress chose to accomplish this goal through means other than private enforcement actions in the district courts.

*Id.* at 598.[5]

This Court is, of course, bound by Second Circuit precedent "unless and until it is overruled . . . by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 653 (S.D.N.Y. 2021) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017)). *Lopez* has not been overruled, nor has its holding been called into question by any subsequent decision of the Supreme Court. To the contrary: in *Fauci*, the Court of Appeals confirmed that "*Lopez* has not been overruled by us *en banc* or by the Supreme Court," 2025 WL 1873141, at *3, and consequently remains binding on the district courts within our Circuit.

Plaintiff's effort to escape binding Second Circuit precedent by suing for declaratory and injunctive relief rather than damages is unavailing. As noted above, he sought similar relief in *Fauci*, but that did not save his ACAA claims from dismissal. Nor can it save the case at bar,

---

[5] The ACAA provides two avenues of redress for aggrieved passengers. First, "the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers." *Lopez*, 662 F.3d at 597. Under that scheme, passengers may file written complaints with the DOT – as plaintiff Abadi has done on many occasions – and the DOT must investigate all complaints that appear to be based on reasonable grounds. *Id*. (citing 29 U.S.C. §§ 40101-46507). "If, following such an investigation, including notice to the air carrier and an opportunity to be heard, the DOT concludes that the carrier has committed a violation, the DOT is required to issue an order to compel compliance with the applicable statutory provision." *Id.* (citing 29 U.S.C. § 46101(a)(4)). "The ACAA also provides a limited right of access to the federal courts by permitting an individual with a 'substantial interest' in an administrative decision of the DOT to file a petition for review in a United States Court of Appeals." *Id*. (citing 29 U.S.C. § 46110(a)). Nowhere in the ACAA, however, did Congress authorize private civil actions – whether for damages or for equitable relief – in the United States District Courts.

because an injunction or declaratory judgment in favor of a private plaintiff – like an award of damages to that plaintiff – is a "private remedy," *Sandoval*, 532 U.S. at 286, that cannot be pursued unless the relevant federal statute expressly or impliedly authorizes such a suit. *See, e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 331 (2015) (medical providers claiming that defendants violated § 30(A) of the Medicaid Act could not seek injunctive relief thereunder because § 30(A) "lacks the sort of rights-creating language needed to imply a private right of action"); *Worldhomecenter.com, Inc. v. KWC Am., Inc.*, 2011 WL 4352390, at \*8-9 (S.D.N.Y. Sept. 15, 2011) (denying injunctive relief under §§ 369-a and 369-b of the New York General Business Law because, *inter alia*, "neither section 369-a nor section 369-b expressly provides for a private right of action" and "no private right of action can be implied").

Consequently, when a federal court holds that there is no private right of action under the ACAA – as the Second, Tenth, and Eleventh Circuits have done – that holding requires the dismissal of all private ACAA claims, including claims for injunctive and declaratory relief. *See Fauci*, 2025 WL 1873141, at \*3 (affirming district court's dismissal of all of "Abadi's claims brought under the ACAA," including his claims for declaratory and injunctive relief, because "there is no implied private right of action" under the statute); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1264, 1271 (10th Cir. 2004) (affirming district court's dismissal of plaintiff's ACAA claim, which sought "an injunction requiring Skywest to provide medical oxygen for her on flights from St George to Salt Lake City," because "the ACAA does not establish a private right of action"); *Love v. Delta Air Lines*, 310 F.3d 1347, 1351, 1359 (11th Cir. 2002) (reversing district court's ruling that plaintiff could sue for "injunctive and declaratory relief" under the ACAA, because "Congress did not intend to create a private right of action in a federal district

court to vindicate the ACAA's prohibition against disability-based discrimination on the part of air carriers").[6]

In this case, all three of plaintiff's claims are brought under the ACAA, which – as the Second Circuit has now twice held – does not provide a private right of action. *Lopez*, 662 F.3d at 597-98; *Fauci*, 2025 WL 1873141, at *3. Consequently, defendants' motions to dismiss should be granted and plaintiff's claims should be dismissed, pursuant to Rule 12(b)(6), with prejudice.

### B.    OSC re Sanctions

Defendants request that plaintiff be ordered to "show cause why he should not be sanctioned" under Fed. R. Civ. P. 11(b)*.* Dom. Airlines Mem. at 10; *see also* Emirates Mem. at 17. Defendants appear to rely primarily on Rule 11(b)(2), under which a party may be sanctioned if the claims set forth in his pleading are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *See* Dom. Airlines Mem. at 11 ("This pro se plaintiff knows the law. He has done his research. There is no good faith argument for reversal not only of the law in this Circuit but that of all other

---

[6] Plaintiff's reliance on the Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201-02, is misplaced. It is well-settled that the "the operation of the [DJA] is procedural only." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Where – as here – the substantive statute at issue does not provide the plaintiff with a cause of action, "the DJA cannot expand the statute's authority by doing so." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 245 (2d Cir. 2012); *see also, e.g.*, *Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of New York*, 762 F. Supp. 3d 247, 281-82 (S.D.N.Y. 2025) (dismissing plaintiff's claim for a declaratory judgment under the Federal Reserve Act "because the DJA provides only a remedy" and "the FRA does not afford BSJI a private right of action"); *Magnoni v. Plainedge Union Free Sch. Dist.*, 2018 WL 4017585, at *7 (E.D.N.Y. Aug. 22, 2018) (If an act "does not provide an individual right of action, the DJA cannot expand [the act] by doing so."). Plaintiff's contrary contention – that the DJA "permits courts to . . . issue declaratory or injunctive relief even when no private damages remedy exists," Pl. Opp. to Dom. Airlines at 6-7; Pl. Opp. to Emirates at 7 – is simply incorrect, and the cases he cites in support of that proposition are inapposite. For example, in *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969), the Court permitted plaintiffs to seek declaratory and injunctive relief under § 5 of the Voting Rights Act (VRA) because – in the Court's view at the time – the VRA "implied a private right of action." *Id*. at 55.

circuits that have followed the dispositive and clear ruling of the Supreme Court in *Alexander v. Sandoval*."); Emirates Mem. at 16 ("Plaintiff is aware there is no implied private right of action [under the ACAA] no matter the type of relief sought."). Emirates further argues that plaintiff "commenced this action merely to harass Emirates and the other defendants," in violation of Rule 11(b)(1). *Id*. In Emirates' view, Abadi is a "vexatious plaintiff," with a "history of frivolous filings," including "over fifty DOT complaints and at least twenty lawsuits," which have cost the airlines "thousands of dollars in counsel fees." *Id*. at 17. Therefore, Emirates argues, "this Court should *sua sponte* enjoin the Plaintiff from filing future litigations against Emirates absent court approval." *Id*. at 18.

"It is unclear in this Circuit whether Magistrate Judges have the authority to impose Rule 11 sanctions." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *17 (S.D.N.Y. July 18, 2017) (citing *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010)), *adopted,* 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017). However, "it is well within the authority of a magistrate judge to issue an order to show cause why such sanctions should not issue," *Pegaso Dev. Inc. v. Moriah Educ. Mgmt. LP*, 2022 WL 1306571, at *2 (S.D.N.Y. May 2, 2022), which is "a necessary prerequisite to the issuance of *sua sponte* Rule 11 sanctions." *Id*.; *see also Adams v. New York State Educ. Dep't*, 2010 WL 4970011, at *11 (S.D.N.Y. Dec. 8, 2010) (noting that magistrate judge properly issued an order to show cause "why Rule 11 sanctions should not be imposed" as part of a report and recommendation to dismiss the plaintiff's complaint), *adopted as modified sub nom. Adams v. New York State Dep't of Educ.*, 855 F. Supp. 2d 205 (S.D.N.Y. 2012), *aff'd sub nom. Hochstadt v. New York State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). As a practical matter, therefore, "'[I]t is well within the authority of a magistrate judge to . . . determine that [Rule 11] sanctions are not warranted.'" *Siani v. Nassau Cmty. Coll.*,

16

2024 WL 3045201, at *2–3 (E.D.N.Y. June 18, 2024) (alterations in original) (quoting *Pegaso*, 2022 WL 1306571, at *2), *objections overruled,* 2024 WL 4449404 (E.D.N.Y. Oct. 1, 2024).

In this case, given its present posture, I decline to issue the requested OSC. First, as noted above, Rule 11 sanctions cannot be imposed on plaintiff at this point in the case absent a finding of "subjective bad faith." *Castro*, 727 F. Supp. 2d at 309; *see also, e.g.*, *Rivas v. Bowling Green Assocs., L.P.*, 2014 WL 3694983, at *1 (S.D.N.Y. July 24, 2014) ("[I]n the case of court-initiated Rule 11 sanctions, where the 'safe-harbor' provision of Rule 11(c)(1)(A) does not apply, the standard to be applied is not one of objective unreasonableness, but subjective bad faith."). Although a lawyer would have understood, after *Lopez*, that plaintiff's ACAA claims were frivolous, I cannot conclude that a *pro se* plaintiff with no formal legal background was acting in "subjective bad faith" by attempting to distinguish between ACAA claims for damages and ACAA claims for injunctive and equitable relief. Moreover, as Judge Engelmayer noted in *Brown v. Kay*, 2012 WL 573198, at *4 (S.D.N.Y. Feb. 21, 2012), a sanctions proceeding at this stage would  necessitate a "complex and difficult inquiry," turning on plaintiff's subjective state of mind both when he filed this case and at other relevant "decision points," such as when he reviewed defendants'  motion to dismiss and when the Second Circuit issued its decision in *Fauci*. In my view, "the costs and burdens of undertaking such an inquiry, and the limitations inherent in it, decisively outweigh the benefits." *Id*.

Second, defendants have only themselves to blame for "the high hurdle presented by the subjective bad faith standard." *Brown*, 2012 WL 573198, at *4. Although all of the facts set forth in their briefs (including Abadi's history of repetitive ACAA litigation) were available to them when this action was filed, they failed to make a sanctions motion in accordance with Rule 11(c)(2) along with their motions to dismiss. After the Second Circuit issued its decision in

*Fauci* – affirming the dismissal of plaintiff's equitable claims, as well as his damages claims, because both were barred by *Lopez* – defendants failed again to take advantage of Rule 11(c)(2), which would have given plaintiff an opportunity to recognize that the distinction he drew in his briefs was unsupportable and withdraw this action accordingly. *See Murawski v. Pataki*, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (declining to sanction pro se plaintiff in part because he "may not have been aware or warned of the possible imposition of sanctions"); *Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 16 (E.D.N.Y. 1996) (noting that "courts that have imposed sanctions against *pro se* litigants frequently have attached importance to the fact that the litigant previously had been placed on notice that he or she was on the verge of violating Rule 11").

Although no OSC will issue in this case, plaintiff should understand that he will face an exceptionally high risk of sanctions should he once again attempt to bring a civil action under the ACAA or its enabling regulations (whether for damages or for equitable relief) in any district court within the Second Circuit.

## IV.    CONCLUSION

For the reasons set forth above:

(i)     I recommend, respectfully, that defendants' motions to dismiss (Dkts. 21, 37) be GRANTED and that plaintiff's Complaint be dismissed with prejudice; and

(ii)    I decline to issue an order to show cause regarding Rule 11 sanctions.

Dated: New York, New York
       January 9, 2026

_____
**BARBARA MOSES**
**United States Magistrate Judge**

18

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. See Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, addressed to the Hon. Paul A. Engelmayer, and delivered to Judge Engelmayer in accordance with his individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Engelmayer. Failure to file timely objections will result in a waiver of such objections and will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc*., 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C*., 596 F.3d 84, 92 (2d Cir. 2010).